IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CITY OF WAUKEGAN, an Illinois municipal corporation, </br></br>    Plaintiff, </br></br>        v. </br></br> JAVED ARSHED, SHAHNAZ ARSHED, d/b/a J & S Enterprises; SHELL OIL COMPANY; EQUILON ENTERPRISES LLC, a/k/a Shell Oil Products US; SHELL OIL PRODUCTS COMPANY LLC a/k/a Shell Oil Products Company | Case No.  08CV2657 </br></br> Judge Robert W. Gettlemen </br></br> Magistrate Maria Valdez |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT**

Now comes Plaintiff, the CITY OF WAUKEGAN (the "City" or "Waukegan"), by and through its attorneys, and hereby submits its Response to the Motion to Dismiss the Amended Complaint filed by Defendants' SHELL OIL COMPANY, SHELL OIL PRODUCTS US and SHELL OIL PRODUCTS COMPANY (collectively "Shell" or "Shell Oil").

### I.   INTRODUCTION

The property at issue (the "Property") is a former gasoline station, bounded on the east and south by residential apartments and houses.  During Shell's ownership, the property was contaminated by the release of petroleum products including benzene, toluene, ethylbenzene and xylenes.  As of the time Shell sold the Property to Javez and Shahnaz Arshed (the other Defendants), and continuing to the present, the Property has continued to be contaminated with significant quantities of benzene (a known

carcinogen). This contamination presents an imminent and substantial danger to human health and the environment. The City seeks injunctive relief arising from the contamination of the Property, to require a full investigation and remediation of the contamination and thereby protect the health and safety of its residents.

Shell argues that the City has failed to plead a *prima facie* case by failing to allege 1) that Shell generated waste; 2) imminent danger attributable to the waste and 3) that Shell is in violation of RCRA regulations relating to underground storage tanks ("USTs").[1] As will be demonstrated below, Shell's arguments ignore the clear terms of the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. 6901, *et seq.*, the requirements for pleading a claim under RCRA, and the allegations of the City's Complaint, as supported by the attached Exhibits.

## II.   THE CITY HAS ALLEGED ALL OF THE REQUISITE ELEMENTS FOR A *PRIMA FACIE* CASE UNDER RCRA

It is important to first review the basis for liability under the statute upon which the City's claims are based. The RCRA citizen suit provision, 42 U.S.C. 6972(a)(1)(B), provides, in relevant part:

> [A]ny person may commence a civil action on his own behalf –
>
> against…any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment

---

[1] Shell also points out that the City is not entitled to civil penalties. On this point Shell is correct. The claim for civil penalties was an unfortunate holdover from a prior draft of the Complaint that was inadvertently not removed. The City agrees that the claim for civil penalties should be stricken.

The plain language of the statute is clear. As the Supreme Court held in *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980), "the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Shell's seeks to artificially limit the scope of liability by asserting that RCRA "is plainly designed to impose liability on generators of waste". (Shell Memo at 6) This assertion is belied by the express language of the statute. Liability is imposed on three distinct classes of responsible parties: 1) past or present generators; 2) past or present transporters; and 3) past or present <u>owners and operators</u> of contaminated property. Prior owners and operators have routinely been found to be liable for failing to remediate contamination caused by petroleum USTs on their property. See, *e.g.*, *Aurora Nat. Bank v. Tri Star Marketing, Inc.*, 990 F.Supp. 1020 (N.D.Ill.1998); *Dydio v. Hesston Corp.*, 887 F.Supp. 1037, 1043-1045 (N.D.Ill. 1995) (Prior owner could be liable for a current violation of RCRA by failing to remediate confirmed contamination resulting from UST leaks); *Raymond K. Hoxsie Real Estate Trust v. Exxon Educ. Foundation*, 81 F.Supp.2d 359, 364-365 (D.R.I.2000)[2]

Moving past the express language of the statute, the elements of a *prima facie* claim under RCRA §6972(a)(1)(B) are:

    1) The property contained solid waste;

    2) The defendant contributed to the handling of this waste; and

---

[2] This also disposes of Shell's assertion that it cannot be held liable because it "did not engage in any gasoline service station activities during its brief ownership". (Shell Memo at 7) No such operational requirement exists. Indeed, Shell admits that it removed the USTs in question from the Property during the time Shell owned it; that Shell notified the Illinois EPA of the release of petroleum products upon removal of the USTs; and that it initiated corrective action as a result. (Shell Memo at 1) Under these circumstances, It is certainly plausible that the contamination at issue resulted, at least in part, in the course of Shell's removal of the USTs.

3) This waste may present an imminent and substantial danger to human health or the environment.[3]

*City of North Chicago v. Hanovnikian,* 2006 WL 1519578, Slip Op. Cite at 2 (N.D.Ill. 2006), citing *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 972 (7th Cir.2002).

One issue must be addressed at this point. This Court (and most likely every other District Court in the country) has doubtless been presented with any number of motions to dismiss based on the purportedly heightened pleading standard resulting from the U.S. Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955 (2007).

Federal Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The *Twombly* Court created some uncertainty regarding recognized concepts of notice pleading, holding that a complaint must include "enough facts to state a claim to relief that is plausible on its face." 127 S.Ct. at 1969. The Court explained, however, that this "revised" standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." *Id.* at 1965. A court should not dismiss a complaint for failure to state a claim if the factual allegations sufficiently "raise a right to relief above the speculative level." *Id.*

---

[3] It is noteworthy that these elements <u>do not</u> include 'violation of any RCRA regulation". (Shell Memo at 8-9) 42 U.S.C. 6972(a)(1)(B) contains no such requirement. Rather, "violation of any permit, standard, regulation, condition, requirement, prohibition, or order" is a basis for liability under §6972(a)(1)(A). Count I of the Amended Complaint is very clearly based on §6972(a)(1)(B). (Amended Complaint, ¶1; Count I (heading) and ¶¶26-27; Exhibit G, ¶11) Shell fails to point out that the case upon which it relies, *Clorox Co. v. Chromium Corp.*, 158 F.R.D. 120, 124 (N.D. Ill. 1994) (Shell Memo at 9) discussed the distinction between the two subsections and confirmed that the case before it was brought under §6972(a)(1)(A), not subsection (B). 158 F.R.D. at 124

4

It is clear that *Twombly* does not represent a dramatic change in Federal notice pleading standards. Nor have subsequent decisions (even from the Supreme Court) interpreted *Twombly* to have resulted in such a change. For example, the 7th Circuit in *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (2007) noted that:

> Two weeks [after *Twombly*] the Court clarified that *Twombly* did not signal a switch to fact-pleading in the federal courts. See *Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). To the contrary, *Erickson* reaffirmed that under Rule 8" [s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " 127 S.Ct. at 2200, quoting *Twombly,* 127 S.Ct. at 1964. Taking *Erickson* and *Twombly* together, we understand the Court to be saying only that at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8. [4]

More to the point, Judge Coar recently addressed the pleading requirements for a RCRA claim in light of *Twombly* in *Village of Riverdale v. 138th Street Joint Venture,* 527 F.Supp.2d 760 (N.D.Ill. 2007) With specific applicability to the allegations in the instant Amended Complaint, Judge Coar held that:

> Here, the complaint contains sufficient factual assertions to support the elements of an RCRA claim. In paragraphs 19 through 33, Riverdale sets out factual assertions concerning

---

[4] Shell's reliance on *EEOC v. Concentra Health Services., Inc.,* 496 F.3d 773 (7th Cir. 2007) is misplaced. In *Concentra,* the court interpreted *Twombly* as imposing "two easy-to-clear hurdles" to satisfy Rule 8(a)(2). First, a plaintiff "must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the ground upon which it rests." 496 F.3d at 776, (citing *Twombly*, 127 S.Ct. at 1964). Second, the allegations in the compliant "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. *Id.* The *Concentra* court affirmed Judge Andersen's dismissal of the plaintiff's complaint, because the complaint was less than a page long and the details that formed the basis for the claim were contained in a single eight-line paragraph that was removed from the plaintiff's amended complaint. *Id* at 780. The court pointed out, however, that upholding the district court's decision to grant the defendant's Motion to Dismiss "is neither to adopt fact pleading nor to impose the heightened pleading…it is only to insist upon easily provided, clearly important facts." *Id.* at 782. See also *Limestone Development Corporation v. Village of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008), where Judge Posner again cautioned that *Twombly* "must not be overread".

>   the ownership of and operations conducted on various parcels of the Location by the Defendants. Paragraphs 34 through 57 outline the activities conducted by the Defendants at the Location that made up the storage and disposal of solid and/or hazard wastes. Finally, paragraphs 65 and 66 of Count I set out the injury-in-fact caused by Defendants-actual and threatened release of pollutants. Riverdale asserts that the Defendants have engaged in activities that present an imminent and substantial endangerment to health or the environment. The facts fairly apprise Defendants of the nature of the claim. Therefore, this Court denies [defendants'] joint request for reconsideration of this Court's dismissal of the 12(b)(6) motions. Furthermore, this Court does not accept Defendants' arguments that first, *Twombly* makes Riverdale's complaint more susceptible to dismissal and second, *Twombly* creates a higher hurdle to demonstrate Article III standing.

*Id.* at 766.

With the foregoing reference in mind, we can now focus on some of the salient allegations in the Amended Complaint:

>   1)  Shell owned the Property from 1988 to 1997. This included four petroleum USTs. (Amended Complaint, ¶¶13-14)
>
>   2)  Shell removed the USTs from the Property. (Amended Complaint, Exhibit C)
>
>   3)  On December 29, 1989, after its removal of the USTs, Shell reported a release of petroleum products from the USTs to the Illinois Emergency Management Agency ("IEMA") and the Illinois Environmental Protection Agency ("IEPA"). Petroleum products, a solid waste,[5] were released from the USTs on the Property. (Amended Complaint, ¶15 and Exhibits B and G)

---

5   Odd as it may seem, a liquid waste is a solid waste under RCRA. See 42 U.S.C. 6903(27)

4) The release of petroleum products occurred on or before December 19, 1989, and resulted in the issuance of a Notice of Release from Illinois EPA to Shell in accordance with the Technical Standards and Corrective Action Requirements for Owners and Operators of Underground Storage Tanks. (Amended Complaint, ¶15 and Exhibit B.)[6]

5) Shell submitted a corrective action plan and conducted a series of environmental investigations, all in response to IEPA's Notice of Release. (Amended Complaint, ¶16 and Exhibit C)

6) The investigations conducted by Shell revealed that benzene and other constituent elements of gasoline contamination were present in significant quantities on the Property. (Amended Complaint, Exhibit C, pgs. 13,14,16,17 and 19 of 99; Exhibit D)[7]

7) Benzene is a known carcinogen. Long term exposure to benzene causes harmful effects on bone marrow and can cause a decrease in red blood cells leading to anemia. (Amended Complaint, ¶20 and Exhibit G, ¶9)

8) The Property is substantially and significantly contaminated with petroleum products which have migrated, or have the potential to migrate, from the subject property and may present an imminent

---

[6] There is no indication that Shell ever contested or questioned its responsibility in connection with the release of petroleum products.

[7] Documents attached to a complaint are considered part of the complaint for all purposes. Fed.R.Civ.P 10(c). Documents attached to a complaint may be properly considered on a motion to dismiss. *Moranski v. General Motors Corp.,* 433 F.3d 537, 539 (7th Cir. 2005)

and substantial endangerment to human health or the environment. (Amended Complaint, ¶20 and Exhibit G)

9) Shell's investigations identified the "potential receptor" of the contamination as an "Adjacent apartment building to the east." (Amended Complaint, Exhibit D)

It is frankly remarkable under these circumstances that Shell claims a lack of adequate allegations regarding imminent danger. More important, allegations or proof of <u>actual</u> harm are not required. The City need only allege, as it has, that the presence of the contamination "*may* present an imminent and substantial endangerment." 42 USC §6972(a)(1)(B) (emphasis added). As the Court in *United States v. Otatti & Goss, Inc,,* 630 F. Supp. 1361, 1394 (D.N.H. 1985) held, "An imminent hazard may be declared at any point in a chain of events which may ultimately result in harm to the public. It is not necessary that the final anticipated injury actually have occurred prior to a determination that an imminent hazard exists." (internal quotations omitted). The City has satisfied its burden of pleading a risk of imminent and substantial endangerment. (Amended Complaint, Count I ¶25, ¶26, ¶28 and Exhibit G.)

### III.    COUNT II STATES A CLAIM FOR COMMON LAW PUBLIC NUISANCE

As Shell points out, this Court's jurisdiction over Count II is based on supplemental jurisdiction. Inasmuch as the City has met its burden of pleading a *prima facie* case under RCRA's citizen suit provision, it is appropriate to exercise supplemental jurisdiction over the public nuisance claim that is based on the identical facts.

Further, the same analysis of Shell's attack on the City's RCRA claim applies here. While Shell correctly identifies the elements of a claim for public nuisance, it

again ignores the allegations in the Amended Complaint that set forth those elements. These include the existence of a public right (Amended Complaint, Count II, ¶24); a substantial and unreasonable interference with that right by Shell (Amended Complaint, Count II, ¶¶25-26); proximate cause (Amended Complaint, Count II, ¶26; and injury (Amended Complaint, Count II, ¶27). Under the notice pleading requirements of the Federal Rules of Civil Procedure, the City need only plead in such a manner as to give Shell fair notice of the nature and basis of the claim. The City has done so. Whether or not Shell's actions were ultimately the "cause" of the public nuisance is a question of fact that cannot be disposed of in the context of a motion to dismiss.

## IV.   CONCLUSION

Almost nineteen years after Shell first began responding to IEPA's directive to investigate the contamination on and from its property, the contamination continues to present a risk to the public. It is far past the time that Shell finally take action to remove that risk. For all of the foregoing reasons, the City respectfully requests that Shell's Motion to Dismiss be denied.

Respectfully submitted,

The City of Waukegan

By:   s/Michael S. Blazer
      One of its attorneys

Michael S. Blazer (ARDC No. 6183002)
Derek B. Rieman (ARDC No. 6283836)
Jeep & Blazer, LLC
24 N. Hillside Avenue, Suite A
Hillside, Illinois 60162
(708) 236-0830 (Office)
(707) 236-0828 (Fax)
mblazer@enviroatty.com
dbrieman@enviroatty.com

## **CERTIFICATE OF SERVICE**

I, Michael S. Blazer, an attorney for Plaintiff, certify that I have caused the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** to be served on counsel of record for the parties listed on the attached service list through the court's CM/ECF system which constitutes service under LR 5.9; and on those individuals on the service list not represented by counsel via Federal Express delivery, on this 4th day of August, 2008.

                                              s/Michael S. Blazer
                                              Michael S. Blazer

**SERVICE LIST**

*City of Waukegan v. Javed Arshed, et al.*, Case No. 08 C 2657

| | |
|---|---|
| Rosa M. Tumialán<br>Michelle A. Gale<br>Harry N. Arger<br>Dykema Gossett Rooks Pitts, PLLC<br>10 South Wacker Drive<br>Suite 2300<br>Chicago, IL  60606<br>rtumialan@dykema.com<br>mgale@dykema.com<br>harger@dykema.com<br><br>Counsel for Shell Oil Company; Equilon Enterprises LLC, a/k/a Shell Oil Products US; Shell Oil Products Company LLC a/k/a Shell Oil Products Company | Javed Arshed<br>Shahnaz Arshed<br>187 Timber Oaks Drive<br>North Aurora, IL 60542 |