IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE CITY OF WAUKEGAN, an Illinois municipal corporation, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JAVED ARSHED, SHAHNAZ ARSHED, d/b/a )<br>J&S Enterprises, SHELL OIL COMPANY, )<br>EQUILON ENTERPRISES LLC, a/k/a Shell Oil )<br>Products US; SHELL OIL PRODUCTS )<br>COMPANY LLC a/k/a Shell Oil Products )<br>Company, )<br>)<br>Defendants. ) | No. 08 C 2657<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff City of Waukegan has brought a two count amended complaint against Javed and Shahnaz Arshed, d/b/a J&S Enterprises ("J&S"), and Shell Oil Co., Equilon Enterprises a/k/a Shell Oil Products US and Shell Oil Products Co., LLC (jointly as "Shell"). Count I seeks injunctive relief and cost recovery under the Resource Conservation and Recovery Act ("RCRA") 42 U.S.C. § 6972(a)(1)(B), and Count II alleges a common law public nuisance. This court has already denied Shell's motion to dismiss for failure to state a claim. Shell now takes a second bite of the apple by joining the Arsheds' motion to dismiss for lack of jurisdiction and/or failure to state a claim. For the reasons that follow, that motion is also denied.

**FACTS**

In 1988 Shell purchased an inactive gasoline service station at 2159 N. Lewis Avenue in Waukegan. It has never operated the site as a service station. At the time Shell purchased it, the site included four petroleum underground storage tanks ("USTs"). By the end of December

1989 Shell had removed the USTs. On December 29, 1989, after completing the removal, Shell recorded a release of petroleum product from the USTs to the Illinois Emergency Management Agency ("IEMA") and the Illinois Environmental Protection Agency ("IEPA"). Petroleum products, which constitute a solid waste under RCRA, 42 U.S.C. § 6903(27), were released from the USTs on the property sometime before December 12, 1989. The notice of release was issued by IEPA to Shell in accordance with the technical standards and correction action requirement for owners and operators of underground storage tanks. In response, Shell submitted a correction action plan and conducted a series of environmental investigations, which revealed that benzene, a known carcinogen, and other elements of gasoline contamination were present in significant quantities. The complaint alleges that the petroleum products have migrated or have the potential to migrate from the property and may present an imminent and substantial endangerment to human health or the environment. Shell's own investigations identified the "potential receptive" of the contamination as an "adjacent apartment building to the east."

Shell sold the property to J&S in 1997. On September 9, 1999, J&S reported a release of petroleum products at the property to IEMA and IEPA.

## DISCUSSION

Defendants have moved to dismiss Count I arguing that the court lacks subject matter jurisdiction. This argument is obviously wrong because RCRA, 42 U.S.C. § 6972(a)(2), provides that actions be brought in "the district court in which the alleged violation occurred or the alleged endangerment may occur." Indeed, although not entirely a settled matter, most courts have held that RCRA actions are exclusively federal. See White & Brewer Trucking, Inc. v. Donley, 952 F. Supp. 1306, 1312 (CD Ill. 1997).

What defendants really argue is that this court should "refer" the case to the IEPA, or abstain from exercising jurisdiction under the doctrine of primary jurisdiction. This is a difficult argument because "when a federal court is properly appealed to in a case over which is has by law jurisdiction, it is its duty to take such jurisdiction . . .. The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." Willcox v. Consol. Gas Co., 212 U.S. 19, 40 (1909). Thus, it is only in exceptional cases that a court may exercise its discretion to withhold otherwise authorized equitable relief. New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 359 (1989).

The doctrine of primary jurisdiction is really a combination of two doctrines. See Arsberry v. State of Illinois, 244 F.3d 558, 562 (7th Cir. 2001). In its original form, more aptly described as "exclusive agency jurisdiction," it applies only when, in a suit involving a regulated firm but not brought under the regulatory statute, an issue arises that is within the exclusive original jurisdiction of the regulatory agency to resolve even though that agency's resolution will usually be subject to judicial review. Id. (citing United States v. Western Pacific R.R., 352 U.S. 59, 64 (1956)). In such cases, the court must stay the suit and refer the issue to the agency. The case would then return to the court if the agency resolution did not dispose of the entire matter.

This form of primary jurisdiction obviously does not apply to the instant case. First, RCRA jurisdiction is exclusively within the federal district courts. The fact that defendants may also be proceeding to remediate any problems voluntarily within the auspices of the IEPA cannot divest this court of jurisdiction.

The doctrine of primary jurisdiction has also been defined as one that allows a court to refer an issue to an agency that knows more about it, even if the agency has not been given

3

exclusive jurisdiction to resolve the issue. Arsberry, 244 F.3d at 564. Under this version of the doctrine, courts can and have referred matters that are beyond the "conventional experiences" of the judiciary or that fall within the realm of agency discretion to an administrative agency with more specialized experience, expertise and insight. Id. at 563. As Arsberry suggests, such cases, in which a court refers an issue to the agency because of the agency's superior expertise rather than because of the agency's jurisdiction, are "not felicitously described as cases of primary jurisdiction." Arsberry, 244 F.3d at 563. These cases are more akin to those in which the court abstains from exercising jurisdiction pursuant to Burford v. Sun Oil Co., 319 U.S. 315, 332-34 (1943). "In such cases, either the court and the agency have concurrent jurisdiction to decide an issue, or only the court has the power to decide it, but seeks merely the agency's advice." Arsberry, 244 F.3d at 564.

This leads to defendant's second argument, that the court should abstain from exercising jurisdiction pursuant to Burford. According to defendants, the issue of remediation of the property is currently before the IEPA, which is best suited to handle the mathematical and scientific data necessary to resolve the issue. Defendants argue that in 2002 J&S voluntarily enrolled in the Title XVI "Leaking Underground Storage Tank" program ("LUST"), implemented by the IEPA. Therefore, according to defendants, any orders by this court would interfere with the investigation being conducted by IEPA.

Under Burford, a federal court should abstain from deciding unsettled questions of state law that relate to a complex state regulatory scheme. Burford abstention involves situations where there exist "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the results in the case then at bar," or where the

federal case "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." New Orleans Pub. Serv., 491 U.S. at 361 (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976)). The court considers the follow factors when determining whether to abstain pursuant to Burford:

1. Whether the suit is based on a cause of action which is exclusively federal;

2. Whether difficult or unusual state laws are at issue;

3. Whether there is a need for coherent state doctrine in the area; and

4. Whether stated procedures indicate a desire to create special state forums to adjudicate the issues presented.

Time Warner Cable v. Doyle, 66 F.3d 867, 874 n. 6 (7th Cir. 1995). An examination of these factors demonstrates that abstention is inappropriate in the instant case.

First, as noted above, this court has exclusive jurisdiction over all RCRA actions. Therefore, Burford abstention would be inappropriate. Next, the court examines whether there are any difficult or unusual state laws at issue. Defendants argue that the IEPA's program is a complex, comprehensive regulatory and statutory scheme, and that the instant suit would disrupt the IEPA proceedings and possible create inconsistent results. The Seventh Circuit has determined, however, that RCRA actions are not precluded by the mere existence of a state agency designed to protect the environment. PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 618 (7th Cir. 1998). Under RCRA, no action may be commenced if the state is already prosecuting a RCRA action. 42 U.S.C. § 6972(b)(2)(C). Defendants do not argue that the state has begun any formal proceedings, but suggest that their voluntary participation is sufficient to cause this court to abstain under Burford. The court disagrees.

Next, the court considers whether there is a need for a coherent state doctrine in this area. "While Burford is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy." New Orleans Pub. Serv., 491 U.S. at 362 (quoting Colorado River, 424 U.S. at 815-16). As noted in Spillane v. Commonwealth Edison Co., 291 F. Supp.2d 728, 733 (N.D. Ill. 2003), there is little likelihood that conflict exists between the goals of Illinois and the federal government with respect to environmental policy. Abstention is generally warranted "where a case presents difficult questions bearing on policy problems of substantial public input whose importance transcends the results in the case at bar." Seay v. Dodge, 1995 WL 557361, *7 (N.D. Ill. 1995). Defendants have failed to indicate how adjudication in the instant case would interfere with the state's environmental policies or goals, particularly any goals that would transcend the result in the instant case.

Finally, defendants argue that administrative orders issued by IEPA bar the instant action. The Illinois legislature has created the Illinois Pollution Control Board ("IPCB") to adjudicate claims brought to it. Spillane, 291 F. Supp.2d at 734. Spillane involved remedial activities pursuant to the IEPA's voluntary site remediation program, a program similar in concept to the LUST program voluntarily entered by defendant. Such voluntary programs do not involve an adjudicatory process as do claims brought to the IPCB. Id. There is no suggestion that the instant matter is pending before the IPCB, and RCRA does not require a plaintiff to exhaust state remedies prior to initiating federal proceedings. Id.; 42 U.S.C. § 6972(f). Accordingly, the court concludes that abstention under Burford is inappropriate.

Defendants' last argument, that their enrollment in the voluntary LUST program moots plaintiff's RCRA complaint, is rejected. The Illinois program does not supercede RCRA. Dydio v. Hesston Corp., 887 F. Supp. 1037 (N.D. Ill. 1995).

## **CONCLUSION**

For the reasons set forth above defendants' motion to dismiss is denied. Defendants are ordered to answer the complaint on or before March 17, 2009.


**ENTER:    February 23, 2009**

_____
**Robert W. Gettleman
United States District Judge**